# Economy Light & Power Company v. Joseph Stephen, Adm'r.

1. ELECTRICITY—*Care Required in Dealing With.*—Where a person deals with a dangerous agent for his pecuniary gain, the degree of care devolving upon him should be in proportion to the dangers which it is his duty to avoid.

2. DAMAGES—*Excessive—In Cases of Death from Negligence.*—It is for the jury to assess the damages in cases of death resulting from the negligent use of electrical appliances, and unless the court of review can see that the verdict is the result of passion and prejudice, or is unreasonable, it will hesitate to interfere on the ground that the amount is excessive.

**Action in Case.**—Death from negligent act. Appeal from the Circuit Court of Will County; the Hon. JOHN SMALL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

GARNSEY & KNOX, attorneys for appellant.

DONAHOE & MCNAUGHTON, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case brought by appellee against the Economy Light & Power Company, a corporation, and Harry B., H. Fred and Horace Humphrey, as defendants, to recover damages for the benefit of the widow and next of kin of Frank Duffy, whose death is alleged to have been caused by the negligence of said defendants.

The amended declaration upon which the case was tried consisted of eight counts. It was substantially set forth, in each of the first six counts, that the Economy Light & Power Company, appellant, was, on the 22d day of January, 1898, engaged in furnishing, selling and renting electricity to consumers, and was possessed of and operating an electric light plant; that, as appurtenant to its electric light system, it was possessed of certain electric wires termed "primary" wires, over which it caused to flow a dangerously high

potential electric current of 1,000 volts pressure; that it
was also possessed of certain other wires termed "second-
ary" wires, over which it caused to flow an electric current
of low potential, to wit, a current of fifty-two volts press-
ure; that appellant used the current of high potential in
connection with an electrical device commonly called a
transformer, the purpose of which is to reduce the elec-
tric current from a high to a low potential before causing
it to flow over the secondary wires, if used in electric light-
ing; that the Humphreys were customers of appellant, own-
ing a certain building in which were electric wires, which
were attached to the secondary wires of appellant and were
designed and constructed for the use and consumption of a
low potential electric current of not to exceed fifty-two
volts pressure; that the existence and flow of the high poten-
tial current over said wires in said building was exceedingly
dangerous to persons in and about the building; that Duffy
was an employe of the Humphreys, engaged at work in
said building, and was wholly ignorant of the laws govern-
ing the production, use and control of electricity, and was
not advised of any existing danger; that it was the duty of
appellant to so operate its electric light system as to pre-
vent the escape of the high potential electric current from
the primary wires to the secondary wires, and that it was
the duty of the Humphreys to exercise ordinary care to
keep the wires over which the electric current was con-
ducted, in their building, in good and safe repair and condi-
tion; that appellant and said Humphreys neglected their
several duties as above set forth, by means whereof said
Duffy, while in said building and in the exercise of ordinary
care for his own safety, came in contact with the electric
wire over and along which there was then and there flow-
ing, through the carelessness and negligence of appellant
and said Humphreys, a dangerously high potential electric
current of 1,000 volts pressure, and thereby received an
electric shock causing his death.   The seventh and eighth
counts each charge that all of the defendants to the suit
were engaged in furnishing the electric light and power,

and were also possessed of and using the premises where the accident occurred.

The negligence charged in the several counts of the declaration was that appellant carelessly and negligently employed a transformer in bad repair and unsafe condition, so that the high potential current aforesaid passed through said transformer, over and along the wires to the lamps in said building and that the Humphreys used inferior wire in said building, and permitted the same to become in bad repair, and the insulation to become worn off; that appellant negligently permitted the high potential current flowing over its primary wires to leak therefrom to and into the ground at points near the Humphreys' building, and permitted the insulation on said wires near said transformer to become worn and worthless; that there were leaks from various causes from the primary wires into and through the ground, and onto and upon the secondary wires aforesaid; that the transformer was so defectively constructed that the. high potential current passed over and through it and thence over and along the wires intended for the low potential current that the Humphreys used.

There was a plea of the general issue and a trial by jury. The jury under the direction of the court found the Humphreys not guilty, while a verdict was returned against appellant for $5,000, and judgment afterward entered for that amount.

Appellant urges, as reasons why the judgment should be reversed, that the verdict is against the evidence, the one instruction given for appellee erroneous, and the damages excessive.

The building used by the Humphreys where Duffy was employed, as shown by the proof, was lighted by electricity furnished by appellant. Duffy was killed about 4 o'clock on the afternoon of January 22, 1898. The day was stormy and the incandescent lights were used in the building, which was a foundry, during the afternoon. One of the workmen, Lowe, was engaged at work at a bench lighted by an electric lamp, attached to a long cord extending to the ceil-

ing.   The lamp could be carried from end to end of the bench, and Lowe had handled the drop cord several times for that purpose, during the afternoon, without injurious effect, although the insulation on it was ragged and torn.   While Lowe was at work at the bench, Duffy, who was in his shirt sleeves, approached and spoke to him. While they were talking, Lowe says that he suddenly saw a flash and looking around, observed Duffy with his hand out as though he was either going to grab the wire or push it away.   Duffy took hold of the wire with both hands, one on each side of the flame and fell, striking Lowe, who also fell and received at the same time something of an electric shock.   Lowe then got up and took hold of the wire in an attempt to pull it loose from Duffy, but received a second shock which knocked him down, when he picked up a board and succeeded in breaking the wire at the place where the flame appeared.   Lowe was not disabled in any way but Duffy was so seriously injured that he died a few moments later.

There was evidence introduced by appellee tending to show that the primary wires were grounded in certain places permitting leaks; that the insulation was worn from the wires near the transformer, permitting the current from the primary wires to pass to the secondary wires over the surface of the transformer, and that the transformer itself was of ancient date and not in good order.   On the other hand, appellant introduced evidence tending to show that it was guilty of no negligence, and attempting to account for the accident by a minute puncture in the insulation between the primary and secondary wires in the transformer, which, it insisted, must have occurred by accident, just at the moment the flame appeared in the wire of the drop cord.   It is certain from the evidence that a current of fifty-two volts will not cause any serious injury to one coming in contact with it, while a current of one thousand volts will cause death. In some way, therefore, the current from the main or primary wire must have gotten upon this local secondary wire.   That Duffy was in the exercise of ordinary care for his safety at the time of the accident is not questioned.

The only important question involved in the case is whether or not it was through the negligence of appellant that the current from the main wire got upon the local wire. For pecuniary gain appellant deals with a dangerous agent, and the degree of care devolving upon it should be in proportion to the dangers which it is its duty to avoid. There was evidence tending to show that the company was guilty of negligence in operating its electric system, and that such negligence was the cause of the injury; and there was also evidence tending to show that the injury was caused by an accident which could not be foreseen. Under such circumstances the verdict of the jury should be permitted to stand, unless it is manifestly against the weight of the evidence. We are unable, however, to say that the verdict in this case is against the weight of the evidence.

Only one instruction was offered by and given for the appellee. That instruction told the jury that if they believed from the evidence that at the time in question Duffy came to his death while in the exercise of ordinary care for his own safety, in the manner and by the means set forth in the amended declaration, that his death was caused by the negligence of appellant as so charged, that he left surviving a widow and children, and that such widow and children were, by his death, deprived of their means of support, then in law, the plaintiff was entitled to recover. Appellant excepted to the giving of this instruction and now insists that it was erroneous. We think, however, that the instruction simply defined the proof necessary on the part of appellee to constitute a cause of action, and that it was properly given. It is also urged that the damages are excessive. It appeared that deceased was a strong, healthy man of about middle age (the exact age not being shown) who was capable of earning $3.50 a day, and that he left a wife and two children.

The value of the life of the deceased, in a pecuniary sense, to his widow and children, is a question incapable of exact determination, and the amount, up to the limit of $5,000, must be largely left to the discretion of the jury.

In the case of C. & A. R. R. Co. v. Pearson, 82 Ill. App. 606, it was said by this court upon this question :

" It is for the jury to assess the damages, and unless the court of review can see that the verdict is the result of passion and prejudice, or is unreasonable, it will hesitate to interfere on the ground that the amount fixed is excessive."

This case appears to have been fairly tried.    We have no reason to suppose that the verdict was the result of passion or prejudice, nor can we say that it was, under the circumstances of the case, unreasonable.

The judgment of the court below is therefore affirmed.